UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


TIMOTHY ARNELL HAMPTON,

        Petitioner,

vs.                                    Case No. 3:04-cv-531-J-32MCR

JAMES R. MCDONOUGH, et al.,

        Respondents.

_____

**ORDER**[1]

**I. Status**

Petitioner initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on June 28, 2004. He challenges his 1998 state court conviction for unarmed robbery. The following grounds for relief are raised in the Petition: (1) Petitioner was denied effective assistance of counsel and deprived of his Sixth Amendment right to confront the witnesses against him because defense counsel failed to object or move for a mistrial when Detective Padgett (one of the state's witnesses) testified that he obtained a warrant for Petitioner's arrest after Petitioner's mother identified Petitioner from a photograph taken at the scene of the bank robbery; and, (2)

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

Petitioner was denied effective assistance of counsel and deprived of a fair trial when the prosecutor made an improper remark (that the Petitioner had elected to proceed to trial despite the fact that the evidence conclusively proved his guilt) during closing argument and defense counsel failed to object to the improper argument. On July 14, 2004, Petitioner filed a letter (Doc. #4), to which he appended the following additional ground for relief: Petitioner was denied effective assistance of counsel and deprived of due process of law when the prosecutor made an improper remark (that the Petitioner confessed to the crime) during opening statement and defense counsel failed to object to the improper remark.

On October 1, 2004, Respondents filed their Response to Petition for Writ of Habeas Corpus (Doc. #8) (hereinafter Response). Respondents provided exhibits (hereinafter Ex.) in support of their Response. <u>See</u> Respondents' Notice of Filing Exhibits (Doc. #10), filed October 4, 2004. Petitioner's Reply to Respondents' Response to Petition for Writ of Habeas Corpus (Doc. #23) was filed on March 31, 2005.

On March 13, 2006, Petitioner filed a Motion to Amend (Doc. #25), in which he sought leave to abandon the second ground in his initial Petition (that Petitioner was denied effective assistance of counsel and a fair trial due to counsel's failure to object to the prosecutor's statement during closing argument that the

Petitioner had elected to proceed to trial despite the fact that the evidence conclusively proved his guilt) and substitute the underlying claim of prosecutorial misconduct (Petitioner was denied a fair trial when the prosecutor stated during closing argument that the Petitioner had elected to proceed to trial despite the fact that the evidence conclusively proved his guilt).  On May 2, 2006, the Court granted the Motion to Amend and directed the Respondents to file a supplemental response.  On June 15, 2006, Respondents filed a Supplemental Response to Amendment to Petition for Writ of Habeas Corpus (Doc. #31) (hereinafter Supplemental Response).  Petitioner's Reply to Respondents' Supplemental Response to Amendment to Petition for Writ of Habeas Corpus (Doc. #32) was filed on July 10, 2006.  Thus, this case is ripe for review.

## II. Procedural History

On October 13, 1998, after a trial by jury, Petitioner was convicted of unarmed robbery.  Ex. C.  On October 23, 1998, the trial court adjudicated Petitioner guilty of this offense and sentenced him as a violent career criminal to forty years of imprisonment.  Ex. D.

Petitioner appealed, raising the following issues: (1) prosecutorial misconduct during closing argument deprived Petitioner of a fair trial; and, (2) the evidence was insufficient to support Petitioner's conviction for unarmed robbery.  Ex. E.  On


December 23, 1999, the First District Court of Appeal per curiam affirmed the judgment of conviction, without issuing a written opinion. Ex. G. The mandate issued on January 10, 2000. Ex. H.

On January 16, 2001, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P., in which he raised five grounds for relief. Ex. I. After conducting an evidentiary hearing, the trial court entered an order denying the motion. Ex. L. Petitioner appealed, and on April 26, 2004, the First District Court of Appeal per curiam affirmed the trial court's order, without issuing a written opinion. Ex. P. The mandate issued on May 12, 2004. Ex. Q at 2.

As noted previously, Petitioner filed his Petition in this Court on June 28, 2004. Respondents assert, and this Court agrees, that the Petition was timely filed. See Response at 4-5.

### III.  Evidentiary Hearing

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. The Court can "adequately assess

[Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

## IV. Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA). Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA and has explained:

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
> > A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law,

> or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.

Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted). A general framework of substantial deference governs our review of every issue that the state courts have decided:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.
>
> . . . .
>
> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it

> should not apply or unreasonably
> refuses to extend that principle to
> a new context where it should apply.
>
> Williams v. Taylor, 529 U.S. 362, 405-07, 120
> S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir.), cert. denied, 126 S.Ct. 803 (2005).

The Eleventh Circuit addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." McIntyre v. Williams, 216 F.3d 1254, 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v.

Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Findings of Fact and Conclusions of Law

In his first ground for relief, Petitioner contends that he was denied effective assistance of counsel and deprived of his Sixth Amendment right to confront the witnesses against him because defense counsel failed to object or move for a mistrial when Detective Padgett testified that he obtained a warrant for Petitioner's arrest after Petitioner's mother identified Petitioner from a photograph taken at the scene of the bank robbery. Respondents concede that this claim has been exhausted in state court.

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law:  "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . .  Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance."  See Strickland, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken

> the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .
>
> A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.

Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam) (footnotes omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand."  Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Petitioner raised this claim as ground two in his 3.850 motion and, after identifying Strickland as the controlling legal authority, the trial court adjudicated the claim as follows:

> In ground two of the instant Motion, Defendant claims that counsel rendered ineffective assistance by failing to move for a mistrial after the State's witness made reference to a statement made by a "non-

testifying" witness. Defendant contends that counsel should have moved for a mistrial when State witness, Detective Padgett, testified that he contacted Defendant's mother and showed her a photograph of Defendant. Defendant contends that the inescapable reference following Detective Padgett's testimony was that Defendant's mother identified Defendant as being depicted in the photograph. Defendant asserts that Detective Padgett's testimony constituted inadmissible hearsay.

Initially, this Court notes that Detective Padgett testified as follows:

> Q.: (Prosecutor) You can go ahead and resume your seat.
> I'm going to hand you back State's exhibit No. 2 and 3, those two separate photographs.
> Now, sir, after you recovered the film and had it processed, did you have occasion, on April 27th of 1998, to come into contact with a person by the name of Mary Lee Geiger?
>
> A.: (Detective Padgett) Yes, sir.
>
> Q.: And who is she, sir?
>
> A.: Timothy Hampton's mother.
>
> Q.: Did you show her anything, sir?
>
> A.: Yes, we showed her Exhibit No. 2.
>
> Q.: Now, on April 27th, 1998, did you have an occasion to get an arrest warrant for the person regarding the robbery [o]f the American National Bank?
>
> A.: Yes, sir.

> Q.: And did you get a judge to sign it that day, sir?
>
> A.: Yes, sir.
>
> Q.: And who was that warrant for, sir?
>
> A.: Timothy Hampton.
>
> (Exhibit "E," page 229.) Detective Padgett never testified about his conversations with Ms. Geiger or what Ms. Geiger said after being shown the photograph. Accordingly, Defendant has failed to establish that counsel had a legal basis to move for a mistrial. Further, hearsay is "a statements [sic], other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.["] §90.801(1)(c), Fla. Stat. (2002.) Detective Padgett did not testify about any **statements** made by Ms. Geiger. Therefore, this Court finds there was nothing improper about Detective Padgett's testimony and the State was permitted to summarize the testimony and argue any permissible inferences during closing arguments. Defendant has failed to demonstrate error on the part of counsel or prejudice to his case.

Ex. L at 4-5.

The trial court's decision with respect to this claim was affirmed on appeal. Thus, there are qualifying state court decisions from both the state trial and appellate courts. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, the Court finds this claim to be without merit for the reasons stated by the Respondents in their Response. See Response at 10-11. Thus, Petitioner is not entitled to relief on the basis of this claim.

In Petitioner's next ground for relief, he claims that he was denied effective assistance of counsel and deprived of due process of law when the prosecutor made an improper remark (that the Petitioner confessed to the crime) during opening statement and defense counsel failed to object to the improper remark. Petitioner raised this claim as ground four in his 3.850 motion, and the trial court adjudicated the claim as follows:

> In ground four of the instant Motion, Defendant claims counsel rendered ineffective assistance by failing to object to the State's comment during opening statements that Defendant confessed to the crime. Defendant contends that the prosecutor's statement that he confessed was unsupported by sworn testimony during the trial and that counsel should have objected to the prosecutor's alleged unfounded statement.
>
> This Court notes that Defendant is challenging the following statement made by the prosecutor during opening statements.

> "They [detectives] gave him his constitutional rights as required by law. And two detectives, Detective[s] Padgett and McClain, read him his rights. He said he understood them. He agreed to speak. They didn't threaten him, make him any promises. And when they showed him one of the photos of that robbery, he said 'Yep, that's me.' He confessed."

(Exhibit "E," page 190.) During trial, Detective Padgett testified that he retrieved the film from the bank cameras and had it processed. (Exhibit "E," pages 220-226.) Detective Padgett identified the photographs recovered from the film. Specifically, Detective Padgett testified as follows:

> Q.: (Prosecutor) You just need to speak again so she can hear.
>
> A.: (Detective Padgett) No. 1 shows what we believe to be the robber of the bank turning from the teller station there with a paper bag in his hand.
>
> Q.: Okay. Go ahead and let the jury see it and the[n] we'll show them No. 2.
> Okay. Show them No. 2 of that composite.
>
> A.: No. 2 is the same man about another step away.
>
> Q.: In terms of the camera, is this a fast speed camera, or how does it work?
>
> A.: It's a pretty fast speed camera. I'm not exactly sure of the speed on it, but it's a pretty high speed camera, it takes the roll pretty quickly.

> > Q.: Okay. Photograph No. 3 of that composite, State's composite No. 1, what does that show?
> >
> > A.: State's Exhibit 3 is the same gentleman steadily walking away.
>
> (Exhibit "E," page 226.) Later in his testimony, Detective Padgett testified that once he arrested Defendant and transported him to Duval County, he showed Defendant State's Exhibit 3 and Defendant answered "'Yep, that's me.'" (Exhibit "E," page 241.)
>
> In light of the above testimony presented during trial, this Court finds that there was nothing improper about the State's comment during opening statements. Defendant was shown a photograph of the robber and admitted that he was the man depicted in the photograph. The comment made by the prosecutor was supported by testimony that was presented at trial. Accordingly, there was no reason for counsel to have objected. Defendant has failed to demonstrate error on the part of counsel or prejudice to his case.

Ex. L at 7-8.

The trial court's decision with respect to this claim was affirmed on appeal. Thus, there are qualifying state court decisions from both the state trial and appellate courts. Upon a thorough review of the record and the applicable law, it is clear that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, the Court finds this claim to be without merit for the

reasons stated by the Respondents in their Response. <u>See</u> Response at 16-18. Thus, Petitioner is not entitled to relief on the basis of this claim.

In his final ground for relief, Petitioner asserts that he was denied a fair trial when the prosecutor stated during closing argument that the Petitioner had elected to proceed to trial despite the fact that the evidence conclusively proved his guilt. Respondents contend, and this Court agrees, that Petitioner is not entitled to relief on the basis of this claim.[2]

The prosecutor stated the following during closing argument:

> Now, you may be thinking to yourself, well, hold up, the victim has come into the courtroom and identified him. Those photographs show he did it. He confessed to it. Why are we here? There must be something here. We must be missing something. Why are we here, the victim identified him, the photographs show he did it, and he confessed. What are we missing? There must be something here, there must be a reason why this case is going to trial. Please recall that in jury selection, I actually didn't, but Mr. Plotkin, the other prosecutor that was sitting at the table[,] one of the three prosecutors that were picking the case yesterday morning or actually yesterday afternoon, too, talked

---

[2] Respondents also contend that this claim is untimely. <u>See</u> Supplemental Response at 4-7. This Court disagrees. As Respondents noted in their initial Response, Petitioner included this prosecutorial misconduct claim as part of his second ground for relief in his initial Petition. <u>See</u> Response at 11, 12-15. Respondents also contend that Petitioner's federal claim in this ground has not been exhausted. <u>See</u> Supplemental Response at 7-8. Again, this Court disagrees with Respondents' contention. Petitioner adequately raised his federal claim on direct appeal.

- 16 -

>about everybody is entitled to a trial. No matter if the evidence is overwhelming, as it is in this case, he, the defendant, is still entitled to have his day in court. That's why we live in this great country. That's what the law requires. Even though the evidence shows his [sic] guilty, he is still entitled to have the State prove it to a jury and a jury come back and return a verdict of guilty. And that's what the defendant has chosen to do, and that's why we're here in a trial.

Ex. R at 290-91.

On direct appeal, Petitioner claimed that this argument deprived him of a fair trial. The appellate court per curiam affirmed his judgment of conviction, implicitly finding this claim to be without merit.

Upon a thorough review of the record and the applicable law, it is clear that the state appellate court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, the Court finds this claim to be without merit for the reasons stated by the Respondents in their Response and Supplemental Response. See Response at 12-15; Supplemental Response at 8-12. Thus, Petitioner is not entitled to relief on the basis of this claim.

Accordingly, for the above-stated reasons, the Petition, as amended, will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition, as amended, is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of August, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

ps 8/1
c:
Timothy Arnell Hampton
Assistant Attorney General Dakan